O. C. SHOREY, *et al., vs.* LEWIS WYCKOFF, SHERIFF, ETC.

Motion for leave to amend precipe by the assignment of errors, where none were assigned in the court below, should be denied.

1. Because the mode of bringing a case into the Supreme Court for review under the laws of 1869 is one of statute, and mandatory in its nature.

2. Because such precipe is a pleading, and unless it contains some kind of an assignment of errors, there is nothing to amend by.

3. Conceding to the court, the power of amendment, it would be impolitic to exercise it.

Dissenting opinion by GREENE, J. At common law errors were assigned in the superior court, and the failure to assign errors was not to be taken advantage of until after a rule on plaintiff to make such assignment. After made, the assignment of errors was amendable. Our statute requiring an assignment of errors in the court below, is in derogation of the *common law* and should be construed along with the common law, and so as to make the least innovation upon that law.

Such construction should also be *the liberal* construction prescribed in the code, rendering the statute directory, and the assignment of errors amendable in this court.

In this case the defendant, having failed to obey a plain direction of the statute, should only be permitted to amend on terms.

Error to the Second District.

*Larrabee & White* for plaintiff in error.

*Bradshaw & Hall, McConaha & York* for defendant in error.

Majority opinion by JACOBS, Chief Justice.

Motion for leave to amend precipe by the assignment of errors when none were assigned in it in the court below.

The majority of the court were of the opinion that this motion should be denied.

1.   Because the mode of bringing a case from the district court to this court for review is entirely statutory, and that requires the plaintiff in error within three months after the judgment to file a precipe with the clerk of the court in which the judgment was rendered containing a particular description of the judgment and a particular description of the errors assigned. Sec. 434, p. 117, statutes of A. D. 1869.

The court of errors shall proceed to hear the cause upon the errors assigned in the precipe, and the defendant may take issue on the errors *so* assigned.   Sec. 439, p. 119.

These provisions are plain, simple and full, and were designed to supersede the long, tedious and complex systems of the common law, so ably, fully, and correctly set forth in the dissenting opinion of our brother Greene.

If there were any defects in this statutory system it possibly might be supplied by reference to the common law.   But there are no defects in it, and hence there is no need for any such reference.

2.   Our opinion is that this statute is mandatory; that there is no way to get into this court but by a strict compliance with its provisions.   It is the mode prescribed by law and there is no other legal and valid way.

3.   The precipe is a pleading filed in the district court, and if it can be amended in this court, it is an exception to the general rule without any reason to support it.

4.   Conceding for the sake of the argument that this court has power to allow an amendmnnt of the precipe, even then we believe it would be impolitic to allow the amendment.   Once establish the right by a decision of this court and amendments would be applied for from the time of filing the precipe up to the close of the final argument.   This would lead to more confusion, delay and injurious consequences than the firm enforcement of a plain and simple rule possibly could effect.   If there had been any attempt to assign errors it would have been the duty of this court to look upon such attempt liberally; but in this case there was no attempt to assign errors.   There is an omission

of mater of substance. We are not deciding a case where the defect is merely formal or clerical.

5. The point here raised in our judgment comes within the principle announced by this court in case of *Adams vs. Mc-Almond.*

Dissenting opinion of Justice Greene.

The plaintiff in error moves to amend his precipe, and assign errors for the first time in this court. His motion presents, as a first and principal question: Whether this court can, under the law regulating its practice, allow him in this case to amend and assign errors originally in this court.

The law governing, in this regard, is to be found in the civil practice act of 1869. Section 434 provides, that " the party desirous of taking his writ of error shall file with the clerk of the court in which the judgment was rendered, a precipe containing a particular description of the judgment, order or decision upon which he wishes to bring his writ of error, and a particular description of the errors assigned, which precipe shall also direct the clerk to issue, under seal of the court, notice to the adverse party of the filing of such precipe, and said precipe shall state the term of the supreme court at which such writ of error will be prosecuted; and the writ of error shall be deemed to have issued at the time of the filing of such precipe." And section 439 of the act provides, that "the court of error shall proceed to hear the cause upon the errors assigned in the precipe, and the defendant may take issue on the errors so assigned."

These sections derogate from the common law. They furnish, so far as operative, a new and different mode of procedure in some respects; and were nothing else to govern their interpretation, they would, according to a familiar rule, so far as they need construction, be strictly construed, or be held to vary the common law no further nor otherwise than to give effect to their necessary import. But by another section of the same statute, the provisions of these sections are to be liberally construed, and not limited by any rule of strict construction. (Sec. 700.)

In legal phrase, "strict construction" of a statute means such construction as presumes the legislature to have intended the least innovation upon previous law; "liberal construction," such as makes no such presumption, but looking primarily at the intent of the legislature, endeavors to fulfill it at any cost of innovation. Strict construction looks to the innovation to restrain and define the intent; liberal construction looks to the intent to determine the amount of innovation. But liberal construction does not necessarily cost any considerable innovation. To construe a law liberally may require a construction narrower than the ordinary meaning of the words employed. Nay, it may require words to be taken in even as narrow a sense as might in another place be given them in strict construction. The legislative intent determines all that. Legislative intent is the main thing looked after in liberal construction. Whatever words a legislature may inadvertently or from the limitations of speech have happened or been obliged to employ to express their intent, those words are in liberal construction to receive a meaning as narrow or as broad as the intent desired to be expressed and operative through them.

Upon this motion a question of construction naturally arises, whether the provisions of the section touching assignment of errors are directory or mandatory, and how far directory and how mandatory. If directory, even in part, this court can perhaps allow errors to be assigned here; if wholly mandatory it certainly cannot. To determine this question, and to act upon the determination, it is absolutely necessary to discover the intent of the legislature in these provisions and to fulfill that intent to the utmost. The intent is to be gathered not merely from the particular words, but from the whole statute and from the law previously existing.

In looking for the previously existing law, it is unnecessary to discuss in turn the civil practice statutes from time to time heretofore in force here. As there appears to have been no substantial divergence from the common law, as regards pleading on error, until the extreme established in the last was reached, these may all be regarded, for the purposes of this case,

as a mass of legislation varying from the common law and presenting the present phase of the act of 1869. And we may look directly at the practice at common law to find what this legislation is designed to change or supersede.

At common law, a writ of error issued out of chancery, to authorize the supreme court to reform the judgment of an inferior court. It was directed to the inferior court and returnable to the superior. When returned, it might if irregular be quashed on motion in the court of error. Errors were assigned in the superior court. Defendant there joined issue on the errors assigned. If plaintiff in error did not assign errors, the the defendant might require him to do so by rule, and if after expiration of the rule he still neglected, might have judgment of non-suit. The suit on error, though not properly a new action, (2 Just., 40; 6 Wheat., 264) seems at common law to have been viewed as a suit *per se,* of which the writ out of chancery was the original process, the assignment of errors the declaration (9 East. 4, 32), and in which the defendant in error might plead a number of kinds of defense, as for instance, a limitation statute, a release of all errors or all suits, as well as *in nullo est erratum.* Until 5 George 1, C. 13, writs of error were, like other original process not amendable; and though the reason of this lack of amendability is said to have been because the suit partook of the nature both of *certiorari* and of a commission (and no court could ever be allowed to amend its own commission), yet the lack of power to amend the writ by the record served as a line of demarcation between proceedings above and those below, and made them, in form at least, independent.

The failure to assign errors, at common law, was not to be taken advantage of, until after a rule on plaintiff in error to assignment; and when made, the assignment was not only freely amendable until a plea was filed, but errors might be moved to the court on the hearing which were not particularly assigned. It was always necessary, however, to assign some error; and it was no good assignment to say *quod in omnibus erratum est,* for the superior court was not bound to inquire of errors until the party pointed them out. (6 East., 4, 6). Assignment of

errors were general or special.   General, when the re was merely
assigned for error insufficiency in law of the pleading of the
party successful below and error in the giving of the judg-
ment.   A special assignment differed from one general, as the
form of a special demurrer does from a general demurrer.

This common law procedure, it is obvious, has to a consid-
erable extent been changed by our legislature.   How far has it
been changed?   It has been plainly and necessarily changed, it
seems to me, so far as this, that no writ of error shall in fact
issue or be returned; that there shall be, in all cases, particular
(or what at common law would be called "special") assignment
of error; that the proper way to assign such errors shall be in
the precipe; that the precipe shall be filed with clerk of the court
below, instead of with a clerk of chancery; that a notice, instead
of a copy of the writ, shall acquaint the defendant in error of
the suit in error; and that no rule other than the direction of
the statute shall be required to urge plaintiff to plead.   As for
joining issue on the errors assigned, that is with us to be done
as at common law in the superior court, and the hearing is to be
as at common law on the errors assigned.   Our statute is silent
as to amendments.

Now what, in view of all this, was the intent of our legis-
lature?   Was it that the direction to assign errors in the prec-
ipe should be regarded as mandatory?   That the plaintiff in er-
ror should particularly assign error, and all errors he desired
to be heard, in his precipe; and otherwise, though guilty of
nothing but inadvertence, or clerical misprision, or honest mis-
take of law, be forever bound by an unjust judgment below?
Was it to substitute for the degree of freedom of pleading and
amendment in vogue at common law, a hard and cramping prac-
tice, absolutely inflexible and inexorable, under which a man's
dearest rights or a community's gravest interests may hang on
the misprision of a clerk, and this, in an age when the leaning
is strong all over our country and England in favor of giving a
party every opportunity to present his case fairly, and in a code
whose language is all in favor of substantial justice?   I cannot
think it.   It is at utter variance with the whole spirit of our

45

code and with the section which requires that to be liberally construed.

But it is said, the precipe is not in court for amendment; it must have been filed in the court below and is beyond the reach of this court. I reply, the legislature evidently intended, that so far forth as it contained an assignment of errors, it should serve as a pleading on error in this court. The defendant is to plead to it here. How can he plead here to a pleading in another court? How can he plead here unless an assignment of errors in the precipe is to be considered to all intents and purposes as a pleading in this court? If my view be correct, and yet no amendment of the assignment of errors in the precipe as originally filed can be made in this court, then I venture to say, that this is the first and only court which ever existed utterly without power to allow a party plaintiff to amend his pleading. But if amendment be allowable, then the whole requirement for assignment of errors in the precipe is directory and not mandatory, and operates simply as an expired rule to plead at common law, and an entirely new or different assignment of errors may be made in this court, on such terms as the court may see fit to impose. I say, an entirely new or different one, for that might be done at common law. At common law, the assignment of errors could be made, or withdrawn and a new one substituted, or any amendment whatever made at any time before judgment or plea. I think it would be an illiberal construction of our liberal code, to hold, where the words of the act do not plainly compel us so to do, that we have less ample powers for the supply of deficiencies and rectification of mistakes in the interest of justice, than existed at common law.

The very first section of our code, two other sections of which we are now construing, provides that the common law, when not repugnant to the laws of the territory, shall be the rule of decision of all the courts of this territory. The common law, in that it permits amendments to assignments of error, and assignment after default, is not repugnant to the two latter sections; moreover, the first section as well as the other two—the section that expressly adopts where not repugnant, and the

sections that expressly derogate from, the common law, are both to be liberally construed.  Under this combination of the practice act, one cannot take a section of the statute invasive of the common law, and recklessly construe that broadly as against the common law, but he is obliged to look into the common law at the same time, and in construction construe the common law and the statute together so as to evolve the most liberal rule from both.

For these reasons, I think an assignment of errors in this court should be allowed.

And yet, as the plaintiff in error has failed to obey a direction of the statute, intended in my opinion to serve the convenience of the 'defendant in error, I think he should not be permitted to plead without terms.  The direction of the statute operates on the plaintiff in error like an expired rule to plead at common law.  If he has failed to obey it, he cannot afterwards plead except by leave of court.  And, moreover, the mistake which counsel urges is almost incredible.  He says, he thought it unnecessary to assign any error, because there could be no error in a judgment—because there is no such thing as error except in the ruling of a judge on a trial.  Certainly, the distinction of counsel is not observed in some, at least, of the books familiar even to pupils in the common law.  For example, turn to Bacon's Abridgement, title *Error*, and we read, that a writ of error "lies where a man is grieved by an error in the *foundation, proceeding, judgment* or *execution* of a suit;" a few lines below, we read "Writs of error or *false judgment*, etc., are of higher nature than other kinds of civil suits;" on another page, "Regularly an *erroneous judgment*," etc.; on another, if certain justices *erred* "*in judgment*, a writ of error lay," etc.; and on another, "If an *erroneous judgment* be given, and the error lies in the *judgment itself*, and not in the process, a writ of error does," etc.  Examples might be multiplied to fill a volume.  In assignment of errors at common law, *the giving of the judgment* was always assigned as error, and this whether the assignment was common or special.

I regard the decision in *Adams vs. McAlmond* as simply

affirming the common law rule that a failure to assign errors is good cause for judgment against plaintiff in error.

In conclusion, I will say, that upon submitting the foregoing views to my brother Justices, and on hearing their contrary views and arguments, I was much impressed with the force of their reasoning and inclined out of complacence, and regarding this as a mere question of practice, to yield to them. But I must confess, that upon further reflection, their arguments lose weight in my mind and my own recur with added cogency, so that I feel that I cannot honestly withhold this dissenting opinion.